UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.

CASE NO. 8:18-cr-411-T-36AEP

GUSTAVO ADOLFO YABRUDI

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by
Maria Chapa Lopez, United States Attorney for the Middle District of
Florida, and the defendant, GUSTAVO ADOLFO YABRUDI, and the
attorney for the defendant, Leonardo Concepcion, mutually agree as follows:

### A. Particularized Terms

1. Count Pleading To

The defendant shall enter a plea of guilty to Count One of the
Information. Count One charges the defendant with conspiring to commit
money laundering, in violation of 18 U.S.C. § 1956(h).

2. Maximum Penalties

Count One carries a maximum sentence of twenty years'
imprisonment, a fine of not more than $500,000 or twice the value of the
monetary instrument or funds involved in the transportation, transmission, or
transfer, whichever is greater, a term of supervised release of not more than

Defendant's Initials _GY_

three years, and a special assessment of $100. With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offense, and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offense, or to the community, as set forth below.

3.    Elements of the Offense

The defendant acknowledges understanding the nature and elements of the offense with which defendant has been charged and to which defendant is pleading guilty. The elements of Count One, charging conspiracy to commit money laundering, are:

First:    two or more people agreed to try to accomplish a common and unlawful plan to violate 18 U.S.C. § 1956; and

Two:    the Defendant knew about the plan's unlawful purpose and voluntarily joined in it.

4.    Indictment Waiver

Defendant will waive the right to be charged by way of indictment before a federal grand jury.

5.    No Further Charges

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge

Defendant's Initials _GY_          2

defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement.

6. Guidelines Sentence

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement. The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

7. Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Defendant's Initials _G Y_          3

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

8.   Cooperation - Substantial Assistance to be Considered

Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all relevant information, including production of any and all books, papers, documents, and other objects in defendant's

Defendant's Initials _GY_                4

possession or control, and to be reasonably available for interviews which the United States may require. If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion at the time of sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG §5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or (3) both. If the cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion for a reduction of sentence within one year of the imposition of sentence pursuant to Fed. R. Crim. P. 35(b). In any case, the defendant understands that the determination as to whether "substantial assistance" has been provided or what type of motion related thereto will be filed, if any, rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

Defendant's Initials _GY_                    5

9.    Use of Information - Section 1B1.8

Pursuant to USSG §1B1.8(a), the United States agrees that no self-incriminating information which the defendant may provide during the course of defendant's cooperation and pursuant to this agreement shall be used in determining the applicable sentencing guideline range, subject to the restrictions and limitations set forth in USSG §1B1.8(b).

10.    Cooperation - Responsibilities of Parties

a.    The government will make known to the Court and other relevant authorities the nature and extent of defendant's cooperation and any other mitigating circumstances indicative of the defendant's rehabilitative intent by assuming the fundamental civic duty of reporting crime. However, the defendant understands that the government can make no representation that the Court will impose a lesser sentence solely on account of, or in consideration of, such cooperation.

b.    It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this agreement, or should the defendant falsely implicate or incriminate any person, or should the defendant fail to voluntarily and unreservedly disclose and provide full, complete, truthful, and honest

Defendant's Initials 6Y                6

knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

(1)     The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

(2)     The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and may either seek reinstatement of or refile such charges and prosecute the defendant thereon in the event such charges have been dismissed pursuant to this agreement.  With regard to such charges, if any, which have been dismissed, the defendant, being fully aware of the nature of all such charges now pending in the instant case, and being further aware of defendant's rights, as to all felony charges pending in such cases (those offenses punishable by imprisonment for a term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury, and further being aware that all such felony charges in the instant case have heretofore properly been returned by the indictment of a grand jury, does hereby agree to reinstatement of such charges by recision of any order dismissing them or, alternatively, does hereby waive, in open court, prosecution by indictment and consents that the United States may proceed by

Defendant's Initials _Gy_          7

information instead of by indictment with regard to any felony charges which may be dismissed in the instant case, pursuant to this plea agreement, and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

(3)     The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

(4)     The government may use against the defendant the defendant's own admissions and statements and the information and books, papers, documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

(5)     The defendant will not be permitted to withdraw the guilty pleas to those counts to which defendant hereby agrees to plead in the instant case but, in that event, defendant will be entitled to the sentencing limitations, if any, set forth in this plea agreement, with regard to those counts to which the defendant has pled; or in the alternative, at the option of the United States, the United States may move the Court to declare this entire plea agreement null and void.

Defendant's Initials _GY_                8

11. <u>Forfeiture of Assets</u>

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 982(a)(1), whether in the possession or control of the United States, the defendant or defendant's nominees. The assets to be forfeited specifically include, but are not limited to, a judgment in the amount that was involved in the offense to which the defendant is pleading guilty. The defendant acknowledges and agrees that, as a result of the acts and omissions of the defendant, the property involved in the offense to which the defendant is pleading guilty has been transferred to third parties and cannot be located by the United States upon the exercise of due diligence. Therefore, the defendant agrees that, pursuant to 21 U.S.C. § 853(p), the United States is entitled to forfeit any other property of the defendant (substitute assets), up to the value of the property involved in the offense. The defendant further consents to, and agrees not to oppose, any motion for substitute assets filed by the United States up to the amount of proceeds obtained from commission of the offense(s). The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil judicial or administrative forfeiture action. The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

If the United States seeks the forfeiture of specific assets pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture and to transfer custody of such property to the United States before the defendant's sentencing. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control directly or indirectly, including all assets

Defendant's Initials _GY_                    10

held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant further agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing. In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

Defendant's Initials  _GY_                    11

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including any agreed forfeiture amount, is collected in full.

## B.  Standard Terms and Conditions

### 1.  Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses

Defendant's Initials __6Y__          12

described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. The special assessment is due on the date of sentencing.

The defendant understands that this agreement imposes no limitation as to fine.

2. <u>Supervised Release</u>

The defendant understands that the offense to which the defendant is pleading provides for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the

Defendant's Initials _GY_     13

conditions of release, the defendant would be subject to a further term of imprisonment.

3.   <u>Immigration Consequences of Pleading Guilty</u>

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4.   <u>Sentencing Information</u>

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies.  The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5.   <u>Financial Disclosures</u>

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United

Defendant's Initials _GY_                14

States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6.    <u>Sentencing Recommendations</u>

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7.    Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the

Defendant's Initials __6 Y__        16

ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8. Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9. Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

Defendant's Initials _GY_            17

10. <u>Voluntariness</u>

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant

Defendant's Initials _Cy_    18

pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

      11.    Factual Basis

      Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth below are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

## FACTS

      Beginning on an unknown date, but no later than August 2011, and continuing through at least in or around May 2017, the defendant, GUSTAVO ADOLFO YABRUDI ("YABRUDI"), and his coconspirators engaged in a scheme to launder, repatriate, and convert illicit drug proceeds held in the United States in United States dollars ("dollars") into Colombian

Defendant's Initials  GY        19

pesos ("pesos") for distribution in Colombia. YABRUDI and his coconspirators executed this scheme in at least two ways, both of which employed the black-market peso exchange ("BMPE")[1] and trade-based money laundering ("TBML").[2]

First, YABRUDI opened, and caused others to open, bank accounts in the United States for the purpose of laundering drug proceeds in the United States for repatriation to Colombia and conversion to pesos. For example, in or around 2015, Coconspirator-3, a Special Agent with the United States Drug Enforcement Administration ("DEA"), instructed YABRUDI to recruit an individual to open a bank account in the Miami area in a different person's name. With the knowledge and acquiescence of YABRUDI and Coconspirator-3, hundreds of thousands of dollars in dollar-denominated cash constituting proceeds from illegal drug sales were deposited into this account. None of these deposits, nor the use of the funds that followed, were officially

---

[1] The BMPE is a means by which individuals in the United States repatriate U.S dollar-denominated funds in the United States to Colombia and convert them into Colombian pesos outside the official international banking system. Typically, money brokers arrange for the receipt of dollars in the United States, followed by a peso-denominated "mirror" payout in Colombia. Because the brokers retain stockpiles of dollars and pesos, they can make these payments quickly, keeping track of what parties owe or are owed what, and in which currency, through a ledger system.

[2] TMBL is another process by which dollars are repatriated to Colombia and exchanged for pesos. In a conventional TBML scheme, illicit, dollar-denominated proceeds in the United States are deposited into U.S. bank accounts and then used to purchase goods that are exported to Colombia. Once arrived in Colombia, the goods are sold in exchange for pesos, accomplishing the three goals of laundering, repatriation, and conversion.

Defendant's Initials 6Y          20

sanctioned DEA operations, and neither YABRUDI nor Coconspirator-3 informed the DEA of these activities while they were occurring.

YABRUDI and Coconspirator-3 directed some of these drug proceeds to other conspirators, including Coconspirator-2, who resided in Marion County, Florida, in the Middle District of Florida, and held a business account there in the name of Company-B. Coconspirator-2 then used these funds to make so-called "mirror" payouts in pesos to traffickers and their associates back in Colombia through the BMPE. On other occasions, YABRUDI took funds from this account and made the mirror payouts in Colombia himself, earning money on the exchange rate that he applied to these BMPE transactions.

YABRUDI directed other portions of the drug proceeds in the account that he and Coconspirator-3 had opened to Coconspirator-1, who owned an export business in the Miami area, Company-A. For example, in 2016, YABRUDI wrote several checks totaling tens of thousands of dollars from this account, all payable to Company-A. YABRUDI intended these transfers to serve as loans to fund export shipments to Colombia as part of the TBML scheme. Coconspirator-1 used the dollar-denominated funds to purchase cellular telephones through Company-A that were exported to Colombia in exchange for pesos, which Coconspirator-1 then used to repay

Defendant's Initials ___GY___          21

YABRUDI the principal of the loans, plus interest. YABRUDI continued to use this account for similar laundering activities through at least May 2017.

YABRUDI sometimes made cash withdrawals from this account for his own benefit. Other times, he provided cash payments to Coconspirator-3 or deposited money into accounts controlled by Coconspirator-3's family members, both at Coconspirator-3's request. At all times, YABRUDI knew that the funds deposited into this account were illegal drug proceeds and that Coconspirator-3 was acting outside the scope of his authority as a DEA Special Agent.

A second means by which YABRUDI and his coconspirators facilitated the laundering, repatriation, and conversion of drug proceeds in the United States into pesos in Colombia involved the use of undercover accounts controlled by the DEA. As part of the agency's mission to identify and bring to justice those responsible for laundering drug proceeds in the United States and abroad, the DEA maintained undercover accounts in the name of shell companies, which accounts it used to receive illicit cash deposits and then wire to suspected money launderers. One of these shell companies was Company-C, which maintained accounts in Hillsborough County, which is located within the Middle District of Florida.

Defendant's Initials __GY__          22

The accounts of Company-C regularly received large cash deposits and other transfers constituting illegal drug proceeds. Coconspirator-3, often through an intermediary, provided YABRUDI with the opportunity to purchase funds in Company-C and other DEA undercover accounts for use in the TBML/BMPE scheme.

For example, in or around October 2012, Coconspirator-4, an intermediary introduced to YABRUDI by Coconspirator-3, informed YABRUDI that dollars were available for purchase and laundering. YABRUDI then purchased approximately $45,000 in illicit funds from a DEA undercover account held by Company-C. YABRUDI immediately arranged for peso-denominated mirror payouts through the BMPE in Colombia to traffickers and their associates to complete the laundering, repatriation, and conversion process as to those traffickers' funds, earning a profit from the exchange rate he charged as part of that transaction. Meanwhile, YABRUDI lent the dollar-denominated funds from the DEA account to Coconspirator-1, who used Company-A to purchase cellular telephones that were exported to Colombia and sold in exchange for pesos. Coconspirator-1 arranged for YABRUDI to be paid in pesos, thereby satisfying Coconspirator-1's debt to YABRUDI, plus interest. Separately, an account held by a company under

Coconspirator-2's control received $50,000 from the same DEA undercover account.

Similarly, in or around February 2014, YABRUDI purchased approximately $250,000 in illicit funds from a DEA undercover account through Coconspirator-4. YABRUDI had these funds wired to an account in the name of Company-A, Coconspirator-1's business. Coconspirator-1 purchased approximately $250,000 in cellular telephones through Company-A that were shipped to Colombia and sold for pesos. Coconspirator-1 returned $100,000 to YABRUDI, plus interest, approximately one month after receiving the wire transfer. Coconspirator-1 also executed a promissory note to YABRUDI for the remaining $150,000, promising to repay YABRUDI the funds plus interest over the following 18 months. Meanwhile, YABRUDI arranged for peso-denominated mirror payouts to traffickers and their associates in Colombia to complete the laundering, repatriation, and conversion process.

In or around April 2015, Coconspirator-4 arranged for YABRUDI to purchase approximately $34,000 of illicit drug proceeds from a DEA undercover account. YABRUDI then directed those funds to an account held by Coconspirator-2's Company-B, which was incorporated in Orange County, Florida, located within in the Middle District of Florida.

Defendant's Initials _6Y_          24

Coconspirator-2 then arranged for peso-denominated mirror payouts to traffickers and their associates in Colombia by way of the BMPE, thereby completing the laundering, repatriation, and conversion process.

YABRUDI was not authorized by the DEA, nor was he otherwise acting under color of law, to engage in these illegal laundering activities. The total amount of illegal funds that passed through Company-A's account at YABRUDI's direction was at least $7,000,000.

12.    Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

Defendant's Initials  GY          25

## 13. Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this _27_ day of _September_, 2018.

MARIA CHAPA LOPEZ
United States Attorney

_____
Gustavo Adolfo Yabrudi
Defendant

Eric K. Gerard  James D. Mandolfo
Assistant United States Attorney

_____
Leonardo Concepcion
Attorney for Defendant

_____
Stacie B. Harris
Assistant United States Attorney
Chief, Special Victims Section