1        **UNITED STATES DISTRICT COURT**
         **MIDDLE DISTRICT OF FLORIDA**
2                 **TAMPA DIVISION**

3          **Docket No. 8:18-cr-411-T-36AEP**

4    . . . . . . . . . . . . . .
                                      :
5    **UNITED STATES OF AMERICA,**    :
                                      :
6                                     :
              Plaintiff,              : Tampa, Florida
7                                     : October 29, 2018
                   v.                 : 11:17 a.m. - 12:16 p.m.
8                                     :
     **GUSTAVO ADOLFO YABRUDI,**      :
9                                     :
                                      :
10            Defendant.              :
                                      :
11   . . . . . . . . . . . . . .

12

         **TRANSCRIPT OF INITIAL APPEARANCE, BOND HEARING**
13               and **CHANGE OF PLEA**
         **BEFORE THE HONORABLE ANTHONY E. PORCELLI**
14            **UNITED STATES MAGISTRATE JUDGE**

15   **APPEARANCES:**

16   **Counsel for Plaintiff:**

17                   James D. Mandolfo
                     US Attorney's Office
18                   400 W. Washington, Ste. 3100
                     Orlando, FL 32801
19
                     Joseph Palazzo
20                   US Department of Justice
                     Criminal Division
21                   1400 New York Ave., Ste. 10302
                     Washington, DC 20001
22
     **Counsel for Defendant:**
23
                     Leonardo E. Concepcion
24                   Law Offices of Leonardo E. Concepcion, P.A.
                     135 San Lorenzo Ave., Ste. 830
25                   Coral Gables, FL 33146-1527

                 UNITED STATES DISTRICT COURT
                 MIDDLE DISTRICT OF FLORIDA
                        TAMPA DIVISION

1    **APPEARANCES:**  (continued)

2

     Interpreter:  Pedro Marino
3

4

     Transcriber:           Nikki L. Peters, RPR, CRR, CRC, FPR
5                           Federal Official Court Reporter
                            801 North Florida Avenue, Second Floor
6                           Tampa, Florida  33602
                            courttranscripts@outlook.com
7

8    Proceedings recorded by FTR Gold Digital Recording.
     Transcript produced by Computer-Aided Transcription.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                         UNITED STATES DISTRICT COURT
                         MIDDLE DISTRICT OF FLORIDA
                              TAMPA DIVISION

**P R O C E E D I N G S**

**THE COURT:** All right. Initially, I want to conduct this matter -- I'll note for the record we'll be conducting this in camera to make a preliminary determination. It is now 11:18. So I'll note the proceeding going further will be conducted in camera and under seal until further order of the Court, which may be soon thereafter.

All right. So is there anyone in the courtroom that needs to be excluded during this period?

**MR. MANDOLFO:** No, Your Honor. We're not seeking to seal the courtroom, either.

**THE COURT:** All right. Well, let me start there then. Because I am curious that by the motion to seal, the charging instrument, all related filings, including the plea agreement, but not a request to seal the hearing itself. And I'll note I had my chambers and myself reach out to the Government to inform them that the Court is not inclined, at this time, to grant the motion to seal. But I wanted to provide the parties -- to make further argument, if necessary, to hear the need for the sealing. And so if you can address that, as well, if you're looking to make further argument for the Court to seal the related documents, that is, the charging instrument and all related documents including the plea agreement, to explain to me, what is that

1    going to accomplish if the record itself of the proceedings

2    is not sealed.

3              So, Mr. Mandolfo, if you want to address that

4    matter or what your position is going forward.

5              **MR. MANDOLFO:**  Your Honor, we're going to withdraw

6    the motion to seal the plea agreement and the related

7    documents at this time.

8              The reason why we were asking for the documents to

9    be sealed but not the courtroom, just for the Court's

10   awareness, was that many of the -- some of the persons

11   involved in this matter, in the investigation, are law

12   enforcement or have ties to law enforcement.  And,

13   therefore, they have particular knowledge of Pacer and

14   CM/ECF, which, in the average case, I'll say, that the

15   persons or targets may not.  And that is why, although

16   there's no one in the courtroom, we believe that the sealing

17   of the actual docket would have assisted in the

18   investigation.  But, Your Honor, at this time, I am going to

19   withdraw the motion to seal the plea agreement and related

20   documents.  I would ask that the motion be withdrawn, and we

21   will file the plea agreement after this hearing today,

22   Your Honor.

23             **THE COURT:**  All right.  You want to be heard on

24   the matter?

25             **UNIDENTIFIED SPEAKER:**  No, Your Honor.

1          **THE COURT:**  All right.  So then, for the record,

2    I'm going to deny the motion to seal the information, waiver

3    of indictment and related documents, as moot as it's been

4    withdrawn, direct that the information, as well as the other

5    related documents that have been filed, be filed on the

6    record and direct the Government to also file another copy

7    of the plea agreement.  Although, I don't believe there's a

8    need to do that.  We'll just have the plea agreement as it

9    is filed also filed on the record, Mr. Mandolfo, so there's

10   no need for you to file another one.

11          Am I correct about that, Ms. Vito?

12          **THE COURTROOM DEPUTY:**  Sure.

13          **THE COURT:**  All right.  So for the record then, I

14   started to say I'm conducting this in camera.  I withdraw

15   that and direct that the entire matter be on the record

16   beginning at 11:18 as I started this proceeding.

17          All right.  So let's call the case then Ms. Vito.

18          **THE COURTROOM DEPUTY:**  United States versus

19   Gustavo Adolfo Yabrudi.  The case is -- sorry, Judge.  I

20   don't have the case number.

21          **THE COURT:**  It is Case No. 8:18-cr-411-T-36AEP.

22          **THE COURTROOM DEPUTY:**  Thank you.

23          **THE COURT:**  And, for the record, now let me just

24   have the attorneys announce their appearance, please.

25          **MR. MANDOLFO:**  Good morning, Your Honor, James

1    Mandolfo on behalf of the United States.  Along with me is

2    Kirsten Passimer (ph) with the FBI and Joseph Palazzo with

3    (inaudible) from DOJ.

4              **MR. PALAZZO:**  Good morning, Your Honor.

5              **MS. PASSIMER:**  Good morning, Your Honor.

6              **THE COURT:**  Good morning to each of you.  Thank

7    you.

8              **MR. CONCEPCION:**  Good morning, Your Honor.

9    Leonardo Concepcion on behalf of Mr. Yabrudi.

10             **THE COURT:**  Pleasure to meet you.  Thank you for

11   your time.

12             And you are Mr. Yabrudi?

13             **THE DEFENDANT (via interpreter):**  (Inaudible.)

14             **THE COURT:**  All right.  No need to stand, sir.

15   Thank you.  You may be seated.

16             Mr. Yabrudi, I know this is the first time that

17   you're appearing on the information that's been filed

18   against you, as well as that you have signed a plea

19   agreement in connection with that charge against you.  But

20   bear with me, because since this is the first time you've

21   appeared, in an abundance of caution, I want to advise you

22   of all your rights.

23             **THE DEFENDANT (via interpreter):**  Okay.

24             **THE COURT:**  First, along with the information

25   that's been filed in this case is what is entitled as a form

1  of -- Waiver of Indictment.  I want to explain to you that

2  you have the right to be charged by way of an indictment in

3  the case.  You've been charged by an information in the

4  case.  An information is different from an indictment.

5          An indictment is a formal charge that is presented

6  to a group of individual -- individuals known as a grand

7  jury.  The grand jury consists of between 16 and 23 persons

8  who were select are selected at random from the community.

9  They meet in secret and determine, based upon evidence

10  presented to them, whether a crime has been committed and

11  whether you, as alleged, are the individual to have

12  committed the crime.

13          In order for the grand jury to return an

14  indictment, at least 12 members of the grand jury must

15  concur in a finding of the probable cause.

16          An information, on the other hand, is just simply

17  a formal accusation that's been filed by the Government

18  against you.  The information has not been presented to the

19  grand jury for its consideration of probable cause.

20  Therefore, in order for the case to proceed on the

21  information, if that is what you desire, you would then have

22  to waive your right to be charged by way of an indictment.

23  Now, having stated that, do you feel you understand the

24  difference between an information and an indictment?

25          **THE DEFENDANT (via interpreter):**  Yes, sir.

1      **THE COURT:**  And, as I stated, I have in front of

2  me the form that is entitled Waiver of Indictment, and it

3  appears to have been signed by you, as well as your

4  attorney.  I'm going to hold it up for you, sir.  Is that

5  your signature on the form?

6      **THE DEFENDANT (via interpreter):**  Yes, sir.

7      **THE COURT:**  And did you review it with your

8  attorney prior to signing it?

9      **THE DEFENDANT (via interpreter):**  Yes, sir.

10      **THE COURT:**  And do you want to waive your right to

11  be charged by way of an indictment?

12      **THE DEFENDANT (via interpreter):**  Yes, sir.

13      **THE COURT:**  Anyone forced you or threatened you in

14  any way in order for you to waive that right?

15      **THE DEFENDANT (via interpreter):**  No, sir.

16      **THE COURT:**  Other than what's in your plea

17  agreement, has anyone promised you anything else of value in

18  order for you to waive that right?

19      **THE DEFENDANT (via interpreter):**  No, sir.

20      **THE COURT:**  All right, sir.  Then based upon your

21  waiver, I find it appropriate to allow the case to proceed

22  on the information, and I've signed the order allowing that

23  to occur.  Now, as I stated, you've been charged by way of

24  an information.  The information charges you with a

25  conspiracy to commit money laundering in violation of

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

1  Title 18, United States Code, Section 1956(h).

2    Did you review the information in consultation

3  with your attorney?

4    **THE DEFENDANT (via interpreter):**  Yes, sir.

5    **THE COURT:**  Now, let me explain to you, you have

6  the right to be represented by an attorney at all stages in

7  your case.  If you cannot afford to hire a lawyer, the Court

8  will appoint one to you at no cost to you to represent you

9  throughout the entirety of the case.

10    Mr. Concepcion, have you been retained in the

11  matter?

12    **MR. CONCEPCION:**  Yes, Your Honor.

13    **THE COURT:**  All right.  Thank you.

14    So is it your desire to have Mr. Concepcion to

15  represent you throughout the entirety of your case, sir?

16    **THE DEFENDANT (via interpreter):**  Yes, sir.

17    **THE COURT:**  Let me just explain if your financial

18  circumstances change, or for any other reason, you can

19  always ask the Court to appoint you a lawyer at a later date

20  at any time during the case.  Do you understand that?

21    **THE DEFENDANT (via interpreter):**  Yes, sir.

22    **THE COURT:**  It's important you understand that you

23  are in no way required to make any statements to anyone

24  about this charge against you.

25    If you've started any statements with anyone, to

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

1  specifically include any conversations with law enforcement,

2  you do not have to continue those statements, and you can

3  stop them at any time.  It's vital you understand that

4  outside any statements you make to your attorney about the

5  charge, any statements you make to anyone else about the

6  charge could and will likely be used against you in the

7  prosecution.  Do you understand that?

8          **THE DEFENDANT (via interpreter):**  Yes, sir.

9      **THE COURT:**  So just for the record, Mr. Mandolfo,

10  as I understand it, the conditions of release were done on

11  the criminal complaint.  Is the Government seeking to modify

12  that in any way?

13      **MR. MANDOLFO:**  Your Honor, yes.  There will be one

14  modification, I believe, which is with regard to the curfew.

15  The defense and the United States have talked previously to

16  this hearing, Your Honor, and a curfew of 9:00 p.m., we

17  believe, would be appropriate.  That is the only

18  modification, Your Honor.

19          **THE COURT:**  All right.  Mr. Concepcion?

20      **MR. CONCEPCION:**  Yes, Your Honor.  Currently,

21  Mr. Yabrudi has to check in with his probation officer any

22  time he leaves the house or he's going to make any kind of

23  trip.  And we're only asking that that be modified to just

24  give him a 9:00 p.m. curfew and give him the ability to move

25  around without having to check in with his exact whereabouts

1   at every point.

2          **THE COURT:**  All right.  To be clear, so I

3   understand, the prior order included a requirement of home

4   detention.  So what you're asking is to modify that to a

5   period of a curfew rather than home detention.  Is that

6   accurate?

7          **MR. CONCEPCION:**  Yes, Your Honor.

8          **THE COURT:**  What is the monitoring system that

9   he's on right now?  Is it EM or GPS?

10         **MR. CONCEPCION:**  It's EM, Your Honor.

11         **THE COURT:**  Mr. Mandolfo, are you asking that he

12  maintain on a GPS if the Court goes for a curfew?

13         **MR. MANDOLFO:**  Your Honor, I'd ask that all of his

14  other conditions be in place.

15         **THE COURT:**  Well, the distinction -- well, let me

16  ask pretrial.  If we imposed a curfew with the electronic

17  monitoring -- which I don't think is a normal practice.  The

18  curfew is normally just checked by pretrial, is that an

19  issue as to the monitoring system if we just have it

20  adjusted by a curfew?

21         **PRETRIAL SERVICES:**  (Inaudible.)

22         **THE COURT:**  All right.  And what's the times of

23  the curfew you're proposing?  Have you had -- Mr. Mandolfo?

24  I'm sorry.

25         **MR. MANDOLFO:**  Until 9:00 p.m.  What time does he

1   go to work?

2          **MR. CONCEPCION:**  He begins work at 6:00 a.m.,

3   Your Honor.  So if we could make his curfew maybe 5:30 a.m.

4   or 5:00 a.m., give him time to get to work.

5          **THE COURT:**  All right.  I will grant the request,

6   modify the conditions of release, set aside the requirement

7   of home detention and impose a curfew.  Mr. Yabrudi is to be

8   inside the residence from 9:00 p.m. to 5:00 a.m.  Outside of

9   that, he may be outside the residence.  That will continue

10  to be monitored by the electronic monitoring, and all other

11  conditions shall remain in effect.

12         All right.  Any questions about that, Mr.

13  Mandolfo, or any other suggested modifications?

14         **MR. MANDOLFO:**  No, Your Honor.  Thank you.

15         **THE COURT:**  Mr. Concepcion, anything else?

16         **MR. CONCEPCION:**  No, Your Honor.  Thank you.

17         **THE COURT:**  All right.  Let me give pretrial a

18  moment to collect the reports.

19         **MR. CONCEPCION:**  Your Honor?

20         **THE COURT:**  Yes.

21         **MR. CONCEPCION:**  One thing after talking with

22  probation.  Mr. Yabrudi is currently looking to change

23  residences.  Is that something we can address now so that we

24  don't have to come back when he finds a new residence as

25  long as he's in the general area?

                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                          TAMPA DIVISION

1          **THE COURT:**  Well, why don't we wait until he

2    changes, and when you're ready, I'll have no problem

3    granting that unless there are other circumstances I'm

4    unaware of.  But I'd rather it be done once you know

5    definitively, and that we can have it on the record as to

6    what the address is going to be.

7          **MR. CONCEPCION:**  Will do.  Thank you, Your Honor.

8          **THE COURT:**  Thank you.

9          **PRETRIAL SERVICES:**  Thank you, Your Honor.

10         **THE COURT:**  All right.  Thank you.

11         All right.  Mr. Yabrudi, as I explained, the

12   primary purpose that this hearing was scheduled for is based

13   upon the plea agreement that's been filed in your case.

14   It's very important you understand everything that we are

15   going to discuss in that regard.  During the hearing, I'm

16   going to have a number of questions for you, as well as some

17   questions for your attorney and the prosecutor.  If at any

18   point you do not understand something, I want you to feel

19   free to interrupt me so I can explain it to you further.

20         Additionally, if at any time you have any

21   questions for Mr. Concepcion, just let me know.  I will stop

22   the hearing and give you all the time that you need.

23         Do you understand that?

24         **THE DEFENDANT (via interpreter):**  Yes, sir.

25         **THE COURT:**  All right.  In a moment, I'm going to

1  ask my courtroom deputy to place you under oath.  I tell you

2  that because it's important you understand the consequences

3  of the oath.  If, in responding to my questions, you should

4  provide any false or misleading answers, you could be

5  charged with additional crimes such as the crimes of perjury

6  or obstruction of justice.  Those crimes would carry

7  additional penalties beyond any penalties you are facing in

8  this case.  Do you understand that?

9          **THE DEFENDANT (via interpreter):**  Yes, sir.

10         **THE COURT:**  All right.  Madam Deputy.

11         Please rise.  Raise your right hand.

12         (Defendant sworn.)

13         **THE DEFENDANT (via interpreter):**  Yes.

14         **THE COURTROOM DEPUTY:**  Thank you.  Have a seat,

15 please.

16         I'll ask you to please state your name for the

17 record.

18         **THE DEFENDANT (via interpreter):**  Gustavo Adolfo

19 Yabrudi (inaudible).

20         **THE COURT:**  All right.  Mr. Yabrudi, before I

21 continue, I want you to understand that if at the end of the

22 hearing you do decide to enter a plea of guilt and your plea

23 is accepted by the Court, it will become very difficult, if

24 not impossible, for you later to change your mind.  Do you

25 understand this?

1          **THE DEFENDANT (via interpreter):**  Yes, sir.

2          **THE COURT:**  So I need to ask you some questions

3     you may consider to be somewhat personal in nature.  Please

4     understand that in no way am I trying to embarrass you.

5     Rather, the purpose of these questions is in order for me to

6     ensure for the record that you are competent to enter a plea

7     of guilt.  Do you understand what I mean by that?

8          **THE DEFENDANT (via interpreter):**  Yes, sir.

9          **THE COURT:**  All right.  Sir, how old are you?

10         **THE DEFENDANT (via interpreter):**  Forty.

11         **THE COURT:**  How far did you go in school?

12         **THE DEFENDANT (via interpreter):**  High school and

13    I studied six months business administration.

14         **THE COURT:**  Is Spanish your primary language?

15         **THE DEFENDANT (via interpreter):**  Yes, sir.

16         **THE COURT:**  Can you read and write in the Spanish

17    language?

18         **THE DEFENDANT (via interpreter):**  Yes, sir.

19         **THE COURT:**  Can you read and write in the English

20    language?

21         **THE DEFENDANT (via interpreter):**  No.

22         **THE COURT:**  What you are charged with in this case

23    in the information, was that translated for you or read to

24    you in the Spanish language?

25         **THE DEFENDANT (via interpreter):**  (Inaudible.)

1      **THE COURT:**  Sure.  The charge against you in the

2  case that you've agreed to plea guilty to, was that charge

3  read to you or translated for you in the Spanish language?

4      **THE DEFENDANT (via interpreter):**  Yes.  By my

5  attorney.

6      **THE COURT:**  All right.  And after that was done,

7  did you feel that you understood the charge against you?

8      **THE DEFENDANT (via interpreter):**  Yes, sir.

9      **THE COURT:**  To your knowledge, have you ever

10  suffered from any mental disease or defect of any kind?

11      **THE DEFENDANT (via interpreter):**  No.

12      **THE COURT:**  In the past 24 hours, have you taken

13  any drugs or medication of any kind?

14      **THE DEFENDANT (via interpreter):**  No.

15      **THE COURT:**  Is there anything at all impacting

16  your ability to think clearly today?

17      **THE DEFENDANT (via interpreter):**  No.

18      **THE COURT:**  And do you understand the purpose of

19  this hearing?

20      **THE DEFENDANT (via interpreter):**  Yes, sir.

21      **THE COURT:**  What is it that you want to do at this

22  hearing?

23      **THE DEFENDANT (via interpreter):**  Accepting

24  everything, cooperate.

25      **THE COURT:**  All right.  Mr. Concepcion, any

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

1    concerns regarding competency in the matter?

2              **MR. CONCEPCION:**  No, Your Honor.

3              **THE COURT:**  All right.  Thank you.

4              Let me just note for the record based upon

5    Mr. Yabrudi's responses to my questions, as well as his

6    demeanor, I do find that he is fully competent to enter a

7    plea of guilt, if he chooses to do so.  Therefore, sir, I'm

8    going to go forward with your hearing.

9              But before I proceed, I must also inform you that

10   you do have the right to have your plea heard by the

11   district judge assigned to your case.  I am the magistrate

12   judge assigned to your case.  The district judge assigned to

13   your case is Judge Charlene Honeywell.  Judge Honeywell's

14   authority is different from my authority.  Judge Honeywell

15   not only has the authority to hear your plea, but it is

16   Judge Honeywell who will decide whether to accept your plea

17   and adjudicate you guilty.  If you're adjudicated guilty in

18   the case, it would then be Judge Honeywell who would impose

19   sentence upon you.

20             If you decided not to enter a plea of guilt, but

21   rather take the case to trial, it would be Judge Honeywell

22   who would preside over your trial.  My authority is just

23   limited to conducting this hearing to determine that you are

24   entering your plea knowingly and voluntarily.

25             If I make that determination, I would then issue a

1   report recommending to Judge Honeywell that your plea be

2   accepted.  And, again, as I stated, it is Judge Honeywell

3   who will decide whether to accept your plea.

4           **THE DEFENDANT (via interpreter):**  Okay.

5           **THE COURT:**  So having stated that, do you feel

6   that you understand the difference in my authority as

7   compared to Judge Honeywell's authority?

8           **THE DEFENDANT (via interpreter):**  Yes, sir.

9           **THE COURT:**  Knowing that difference, do you wish

10  to waive your right to have the plea before Judge Honeywell

11  and have your plea before me today?

12          **THE DEFENDANT (via interpreter):**  Yes, sir.

13          **THE COURT:**  Has anyone forced you or threatened

14  you in order for you to waive your right to have the plea

15  before Judge Honeywell?

16          **THE DEFENDANT (via interpreter):**  No, sir.

17          **THE COURT:**  Has anyone promised you anything of

18  value in order for you to waive that right?

19          **THE DEFENDANT (via interpreter):**  No, sir.

20          **THE COURT:**  All right, sir.  Then based upon your

21  waiver, I find it appropriate to go forward with your plea.

22          What I want to do first for you is simply

23  summarize the sole charge against you in the information.

24  Again, Count I of the information charges you with a

25  conspiracy to commit money laundering in violation of title

1   18, United States Code 1956(h).  In summary, the conspiracy

2   alleges on page 6, that beginning on an unknown date, at

3   least as early as in or around August of 2011, and

4   continuing through and including at least in or around May

5   of 2017, in the Middle District of Florida and elsewhere,

6   you did knowingly and willfully conspire and agree with, as

7   identified in the information, coconspirator one, two, three

8   and four, and other persons, both known and unknown, to

9   commit certain offenses against the United States,

10  specifically to transport, transmit, or transfer monetary

11  instruments or funds from a place in the United States to a

12  place outside the United States with the intent to promote

13  the carrying of a specified unlawful activity, namely, the

14  unlawful distribution of controlled substances.

15  Additionally, to transport, transmit or transfer monetary

16  instruments and funds from a place in the United States to a

17  place outside the United States, knowing that said monetary

18  instruments and funds represent the proceeds of some form of

19  unlawful activity and knowing that the transportation,

20  transmission or transfer was designed in whole or in part to

21  conceal or disguise the nature, location, source, ownership,

22  or to control the proceeds of a specified unlawful activity.

23  Again, namely, the unlawful distribution of controlled

24  substances.

25          I want to ask you again, sir, do you feel that you

1    understand that charge against you?

2            **THE DEFENDANT (via interpreter):**  Yes.

3            **THE COURT:**  Do you feel you've had a full and fair

4    opportunity to review all the facts and evidence in this

5    case regarding this charge against you in consultation with

6    your attorney?

7            **THE DEFENDANT (via interpreter):**  Yes, sir.

8            **THE COURT:**  And has your attorney done everything

9    that you have asked him to do for you in your case?

10           **THE DEFENDANT (via interpreter):**  Yes, sir.

11           **THE COURT:**  And are you fully satisfied with the

12   advice and representation you have received in your case?

13           **THE DEFENDANT (via interpreter):**  Yes, sir.

14           **THE COURT:**  Did you discuss with Mr. Concepcion

15   all your options in your case to specifically include your

16   option to take the case to trial, if you wanted a trial?

17           **THE DEFENDANT (via interpreter):**  Yes, sir.

18           **THE COURT:**  And after having those conversations,

19   are you fully satisfied to plead guilty pursuant to the

20   written plea agreement that's been filed in your case?

21           **THE DEFENDANT (via interpreter):**  Yes.

22           **THE COURT:**  All right, sir.  If you can, confirm

23   for me that those are your initials at the bottom of each of

24   the pages in the plea agreement, as well as your signature

25   on the last page.

 1          **THE DEFENDANT (via interpreter):**  Yes, sir.

 2          **THE COURT:**  Do your initials and your signature in

 3   the plea agreement memorialize that you reviewed it in its

 4   entirety in consultation with your attorney after it was

 5   translated for you in the Spanish language?

 6          **THE DEFENDANT (via interpreter):**  Yes, sir.

 7          **THE COURT:**  And did Mr. Concepcion answer for you

 8   all your questions about the plea agreement?

 9          **THE DEFENDANT (via interpreter):**  Yes, sir.

10          **THE COURT:**  As such, do you feel that you

11   understand all of the provisions of the plea agreement?

12          **THE DEFENDANT (via interpreter):**  Yes, sir.

13          **THE COURT:**  All right, sir.  What I intend to do

14   is discuss with you a number of the provisions in some

15   detail.  I'm not going to cover each and every provision.

16   But that is not to say that I think one provision is more

17   important than another.  If you have any questions about

18   anything in the provision, you just let me know, and we will

19   discuss it further.  So looking at page 1, paragraph A1,

20   this provision simply memorializes what we just discussed.

21   That is, you've agreed to plead guilty to Count I of the

22   information, which, again, charges you with conspiring to

23   commit money laundering, in violation of Title 18,

24   United States Code, Section 1956(h).  Again, sir, is that

25   the charge you've agreed to plead guilty to in the case?

 1              **THE DEFENDANT (via interpreter):**  Yes, sir.

 2          **THE COURT:**  All right.  In return for your

 3    agreement to plea guilty to Count I, if we look at the

 4    bottom of page 2, paragraph A5 of the plea agreement.  By

 5    this provision, the United States Attorney's Office for the

 6    Middle District of Florida has agreed not to charge you with

 7    committing any other federal criminal offenses known to that

 8    office at the time of the execution of your plea agreement.

 9    So what that simply means is, if the Government is aware of

10    other criminal charges that you may be connected with, but

11    those charges do not relate to this instant offense, the

12    Government remains free to charge you with those other known

13    criminal offenses.  Do you understand that?

14             **THE DEFENDANT (via interpreter):**  Yes, sir.

15          **THE COURT:**  Before I go on, I want you to

16    understand that the plea agreement is, in essence, like a

17    contract.  It's a contract between you and the United States

18    Attorney for the Middle District of Florida.  And the reason

19    why I put it to you in those terms is because it's important

20    you understand that the plea agreement is only binding upon

21    yourself and the United States Attorney for the Middle

22    District of Florida.

23             To highlight this point, if we turn to page 17 and

24    look at paragraph B8 of your plea agreement, this provision

25    puts you on notice of this issue.  It reads that you

1  understand that the plea agreement is limited only to the

2  office of the United States Attorney for the Middle District

3  of Florida, and it cannot bind any other Federal, State or

4  local prosecuting authorities.  Do you understand that?

5          **THE DEFENDANT (via interpreter):**  Yes.

6          **THE COURT:**  Now, there are certain provisions in

7  your plea agreement that have been negotiated on your behalf

8  in an effort to mitigate any potential sentence you may

9  receive.  If we go back to page 3 and look at paragraph A6,

10  this is one such provision.  By this provision, the United

11  States has agreed to recommend to the Court that you be

12  sentenced within the applicable advisory guideline range as

13  calculated by the Court pursuant to the United States'

14  sentencing guidelines, as adjusted by any departure the

15  United States has agreed to recommend in your plea

16  agreement.  So I want to explain that a little more for you.

17          At your sentencing hearing, Judge Honeywell is

18  going to perform a type of calculation in order to determine

19  an appropriate advisory guideline range for your case.  The

20  calculation of the advisory guideline range is very

21  important to you, because the Court is going to use that

22  range as a guide to determine your sentence.  The advisory

23  guideline range is going to consist of a high end, as well

24  as a low end, in terms of months of imprisonment.

25          And once the Court has calculated the appropriate

1  range, by this provision the Government will recommend that

2  you be sentenced within that range.  In other words, the

3  Court not depart or vary above or beyond the range.

4        Do you understand that?

5        **THE DEFENDANT (via interpreter):**  Yes, sir.

6        **THE COURT:**  All right.  Now, let's go on to the

7  next provision on page 3, paragraph A7.

8        By this provision, absent any adverse information

9  which may be received suggesting such a recommendation to be

10  unwarranted, the United States has agreed to recommend to

11  the Court that you receive a two-level downward adjustment

12  based upon your acceptance of responsibility.  Additionally,

13  if it is applicable, the United States has agreed to file a

14  motion with the Court requesting an additional one level

15  downward adjustment based upon your acceptance in the case.

16        So, in other words, by this provision, there is a

17  total potential for a three-level downward adjustment in the

18  advisory guideline range calculation based upon you

19  accepting responsibility in the case.  Do you understand

20  that?

21        **THE DEFENDANT (via interpreter):**  Yes, sir.

22        **THE COURT:**  So I want to remind you what we spoke

23  about just a moment ago.  That is, your plea agreement is

24  only binding upon yourself and the United States Attorney.

25  The reason why I remind you of this is because it's

1    important you understand that the Court is not a party to

2    the plea agreement, and, as such, the Court cannot be bound

3    by any of the provisions of the plea agreement.

4              To emphasize this point, if we turn to page 16 and

5    look at paragraph B6 on the top of that page.  In the middle

6    of this provision, you're specifically put on notice of this

7    issue.  It reads, in summary, that you further understand

8    and acknowledge that any discussions between you or your

9    attorney, and the attorney or other agents for the

10   Government, regarding any recommendations by the Government,

11   are not binding on the Court.  And that should any

12   recommendations be rejected, you will not be permitted to

13   withdraw from your plea pursuant to the plea agreement.

14             So again, simply stated, the Court does not have

15   to follow any of the provisions of the plea agreement.  If

16   the Court does not follow any of the provisions, you cannot

17   later complain and ask that you withdraw from your plea of

18   guilt.

19             You understand that?

20             **THE DEFENDANT (via interpreter):**  Yes.

21             **THE COURT:**  It's also important you understand

22   that you would have the Constitutional right to appeal any

23   sentence that you were to receive in this case.  That is,

24   you have the right to complain to a higher Court about your

25   sentence.  But by this next provision, also on page 16, in

1   paragraph B7 of your plea agreement, you have expressly

2   waived your right to appeal the sentence unless certain

3   events occur.  As outlined on page 17, those events include:

4   One, the ground the sentence exceeds the applicable advisory

5   guideline range as calculated by the Court pursuant to the

6   United States' sentencing guidelines.  Two, the ground of

7   that the sentence exceeds the statutory maximum penalty.

8   Three, the ground the sentence violates the Eighth Amendment

9   to the Constitution, which is cruel and unusual punishment;

10   or, four, in the event the Government files an appeal in

11   your case, you would then be free from the waiver, and you

12   could appeal any sentence that you would receive.

13          Do you understand, Mr. Yabrudi, by this provision

14   of your plea agreement you have expressly waived your right

15   to appeal the sentence unless one of those events occurs as

16   I've just described them?

17          **THE DEFENDANT (via interpreter):**  Yes, sir.

18          **THE COURT:**  Has anyone forced you or threatened

19   you in any way in order for you to waive your right to

20   appeal the sentence?

21          **THE DEFENDANT (via interpreter):**  No, sir.

22          **THE COURT:**  Other than what's in your plea

23   agreement, has anyone promised you anything else of value in

24   order for you to waive that right?

25          **THE DEFENDANT (via interpreter):**  No, sir.

1          **THE COURT:**  All right.  If you'll go back in your

2     plea agreement starting on page 4 and going on through

3     page 8, in paragraphs 8A through 810, each of these three

4     provisions are detailing any potential cooperation and your

5     rights and responsibilities associated with that cooperation

6     or substantial assistance.  It is not my intent to discuss

7     with you all three of those provisions in detail unless you

8     have a specific question.  What I do want to do for you,

9     though, is highlight the last sentence of paragraph A8 which

10    is on the bottom of page 5 of your plea agreement.  This

11    sentence reads that in the case "you understand that the

12    determination as to whether substantial assistance has been

13    provided or what type of motion relate thereto will be

14    filed, if any, rests solely with the United States Attorney

15    for the Middle District of Florida," and you agree that you

16    cannot and will not challenge that determination, whether by

17    appeal, collateral attack, or otherwise.

18          So I want to explain that a little more for you.

19    If you do decide to cooperate with the Government, and you

20    feel your cooperation is worthy of a motion for reduction in

21    your sentence, but the Government disagrees with your

22    assessment and does not file such a motion, then you cannot

23    later complain and ask to withdraw from the plea of guilt.

24          Additionally, as we just discussed, nothing in the

25    plea agreement is binding upon the Court, and the same

1   applies for any motions that may be filed.

2          So in the event that do you cooperate and the

3   Government does file a motion on your behalf, the Court does

4   not have to grant the motion.  And if the Court does not

5   grant the motion, then you cannot later complain and ask to

6   withdraw from the plea of guilt.  Do you understand that?

7          Take your time.

8          **THE DEFENDANT (via interpreter):**  Yes, sir.

9          **THE COURT:**  All right.  Any questions about any of

10  these provisions?

11         **THE DEFENDANT (via interpreter):**  No, sir.

12         **THE COURT:**  I'll just ask you in general as to

13  your decision to plea guilty.  Has anyone forced you or

14  threatened you, or anyone that you may know for that matter,

15  in order to induce you to plea guilty in this case?

16         **THE DEFENDANT (via interpreter):**  No, sir.

17         **THE COURT:**  Outside of what's in the plea

18  agreement, has anyone promised you anything else of value in

19  order to induce you to plea guilty?

20         **THE DEFENDANT (via interpreter):**  No, sir.

21         **THE COURT:**  Mr. Concepcion, are you aware of any

22  outside promises?

23         **MR. CONCEPCION:**  (Inaudible.)

24         **THE COURT:**  Mr. Mandolfo?

25         **MR. MANDOLFO:**  No, Your Honor.

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

1          **THE COURT:**  All right.  Mr. Yabrudi, I must

2    explain to you that by pleading guilty, there will be

3    collateral consequences to your plea.  Those consequences

4    will include the loss of valuable civil rights such as the

5    right to vote, the right to hold public office, the right to

6    serve on a jury, or the right to possess a firearm or

7    ammunition of any kind.

8          Additionally, if you're not a citizen of the

9    United States, you will then be deported back to your home

10   country, denied reentry into the United States, and denied

11   citizenship to the United States.

12         Do you understand each of these consequences as

13   I've just explained them?

14         **THE DEFENDANT (via interpreter):**  Yes, sir.

15         **THE COURT:**  Any questions about that?

16         **THE DEFENDANT (via interpreter):**  No, sir.

17         **THE COURT:**  I want you to understand then the

18   penalties associated with Count I.  These are outlined for

19   you in your plea agreement in paragraph A2 starting on

20   page 1.

21         Count I carries a maximum sentence of 20 years

22   imprisonment, a maximum fine of $500,000 or twice the value

23   of the monetary instrument or funds involved in the money

24   laundering, a term of supervised release of at least three

25   years -- excuse me, of not more than three years, and a

1   special assessment of $100 which will be due on the date of

2   sentencing.

3              Having stated that, do you have any questions

4   about the potential penalties associated with Count I of the

5   information?

6              **THE DEFENDANT (via interpreter):**  No.

7              **THE COURT:**  I want you to understand what a term

8   of supervised release is.

9              After you're released from jail, the Court is

10  going to place you on a term of supervision, and it will

11  place upon you certain restrictions or conditions on your

12  liberties.  If you violate any of the Court's conditions

13  while on supervision, the Court, after conducting a hearing,

14  could order you back to jail for an additional period of

15  time.  Having stated that, do you feel you understand the

16  potential consequence for a violation of supervised release?

17             **THE DEFENDANT (via interpreter):**  Yes, sir.

18             **THE COURT:**  You must also explain for you that

19  parole has been abolished.  What that means is whatever term

20  of imprisonment you receive in the case, you will then serve

21  all that time incarcerated and not be released on early

22  parole.  Do you understand that?

23             **THE DEFENDANT (via interpreter):**  Yes.

24             **THE COURT:**  Is there any applicable forfeit or

25  restitution in the matter?

1        **MR. MANDOLFO:**  No, Your Honor.

2        **THE COURT:**  All right, sir.  Have you discussed

3    the United States Sentencing Guidelines with Mr. Concepcion

4    and how that might apply in your case?

5        **THE DEFENDANT (via interpreter):**  Yes, sir.

6        **THE COURT:**  Mr. Yabrudi, not only is that

7    perfectly appropriate, it's anticipated you would do that.

8    But I need to emphasize for you, and it's important you

9    understand, that no one -- and by no one, that includes your

10   attorney -- no one can tell you with any certainty what your

11   advisory guideline range or your sentence will be in the

12   case.  This cannot be done for a number of reasons.  One

13   specific reason is because the United States Probation

14   office will have to prepare an important document called a

15   Presentence Investigative Report.

16        This report is very important to you because the

17   Court is going to use it as an aid to determine your

18   sentence.  You will have the opportunity to review the

19   report in consultation with Mr. Concepcion, and you will be

20   allowed to make any objections to the report you deem

21   necessary.  The Government is going to get that same

22   opportunity.  If the objections go unresolved prior to your

23   sentencing hearing, they then are going to be resolved at

24   the sentencing hearing by the Court.  Therefore, again, I

25   must emphasize that no one can tell you with any certainty

1    what your advisory guideline range or sentence will be.  Do

2    you understand that?

3              **THE DEFENDANT (via interpreter):**  Yes, sir.

4              **THE COURT:**  So, in essence, really what that means

5    is after consulting with Mr. Concepcion you've attempted to

6    estimate a potential guideline range or a sentence for your

7    case, you need to understand that your estimation could be

8    wrong.  And if it is wrong, you cannot later complain and

9    ask to withdraw from the plea of guilt.  You understand

10   that?

11             **THE DEFENDANT (via interpreter):**  Yes, sir.

12             **THE COURT:**  All right.  I must also explain to you

13   that the United States Sentencing Guidelines are not binding

14   upon the Court.  That is, they are only advisory.  What that

15   means is once the Court has calculated the appropriate

16   advisory guideline range for your case, the Court, in some

17   circumstances, could depart or vary above or beyond the

18   range up to the statutory maximum sentence.  Or, in other

19   circumstances, depart or vary below the range of the

20   statutory minimum sentence.  Do you understand that?

21             **THE DEFENDANT (via interpreter):**  Yes, sir.

22             **THE COURT:**  Mr. Yabrudi, it's very important you

23   understand that by pleading guilty in your case, you're

24   giving up very important constitutional rights.  Those

25   rights include your right to persist in a plea of not guilty

1    and take the case to trial.

2              Now, at trial, the Government would always bear

3    the burden of proof to establish your guilt as charged

4    beyond a reasonable doubt.  At the trial, you'd be presumed

5    innocent, and you would never be required to prove anything

6    at all.

7              At the trial, you'd have a jury of 12 persons who

8    would be selected at random from the community and who could

9    not find you guilty unless each and every member of the jury

10   all agreed beyond a reasonable doubt that you committed each

11   of the essential elements of the charged offense.

12             Additionally, as you know, and as we discussed

13   earlier, you have the right to have effective assistance of

14   counsel at all stages in the case.  And if you could not

15   afford to hire a lawyer, the Court would appoint one to you

16   at no cost to you to represent you throughout the entirety

17   of the case.

18             Now, at the trial, you'd have the right to hear

19   and see all the witnesses called by the Government against

20   you and the right to confront and cross-examine those

21   witnesses in your defense.  Additionally, you would have the

22   right to challenge any evidence the Government sought to use

23   against you.

24             As I stated, you would never be required to prove

25   anything at all.  But if you decided to do so, you would

1   have the right to present a defense on your own behalf.

2   That is, to call any witnesses you deem necessary or present

3   any evidence you thought important.

4           If your witnesses would not come to Court

5   voluntarily or if you could not afford to pay for your

6   witnesses or your evidence, you would have the right to have

7   the Court to order your witnesses to come testify for you at

8   no cost to you, as well as the right to have the Court to

9   order your evidence be produced at no cost to you.

10          Also, if you decided to do so, you would have the

11  right to testify in your own defense.  But, again, to be

12  abundantly clear, at the trial you would never be required

13  to prove anything at all.  So if you decided not to present

14  a defense, the jury would be specifically instructed that it

15  could not draw any unfavorable conclusion from your silence.

16          Do you understand, Mr. Yabrudi, that by entering a

17  plea of guilt in this case, you are giving up all these

18  valuable constitutional rights as I've just described them?

19          **THE DEFENDANT (via interpreter):**  Yes, sir.

20          **THE COURT:**  Any questions about any of those

21  rights?

22          **THE DEFENDANT (via interpreter):**  No, sir.

23          **THE COURT:**  Let me also explain, if you have any

24  objections as to how the evidence was gathered in your case,

25  brought against you, you are waiving any objections to those

1   matters.  Do you understand that?

2           **THE DEFENDANT (via interpreter):**  Yes, sir.

3           **THE COURT:**  All right, sir.  Then what I want to

4   you understand is what the Government would have to prove in

5   order to establish your guilt for Count I of the

6   information.  This is what is known as the essential

7   elements.  The elements are outlined for you on page 2 of

8   the plea agreement in paragraph A3.

9           The elements for Count I, that is a conspiracy to

10  commit money laundering, are, first, that two or more people

11  agreed to try to accomplish a common and unlawful plan as

12  charged in the information; and, second, that you, knowing

13  the unlawful purpose of the plan, willfully joined in it.

14  Having stated that, do you feel you understand what the

15  Government must prove in order to establish your guilt for

16  Count I of the information?

17          **THE DEFENDANT (via interpreter):**  Yes, sir.

18          **THE COURT:**  Any questions about any of those

19  elements?

20          **THE DEFENDANT (via interpreter):**  No.

21          **THE COURT:**  All right.  In a moment, I'm going to

22  have the prosecutor give me a factual basis in support of

23  each of those essential elements.  I expect he's largely

24  going to read or summarize from the facts starting on

25  page 19 in paragraph E11 of your plea agreement.  But you

1   need to listen carefully to these facts because they're not

2   only important as to the essential elements, but the Court

3   could rely upon them to determine your sentence.

4          All right.  Mr. Mandolfo.

5          **MR. MANDOLFO:**  Starting on page 19, Your Honor.

6          Beginning on an unknown date, but no later than

7   August 2011, and continuing until at least in or around

8   May 2017, the defendant, Gustavo Adolfo Yabrudi, and his

9   coconspirators engaged in a scheme to launder, repatriate,

10  and convert illicit drug proceeds held in United States --

11  in United States dollars into Colombia pesos for

12  distribution in Colombia.

13         Yabrudi and his coconspirators executed this

14  scheme in at least two ways, both of which employed the

15  black-market peso exchange and trade-based money laundering.

16         First, Yabrudi opened and caused others to open

17  bank accounts in the United States for the purpose of

18  laundering drug proceeds in the United States for

19  repatriation to Colombia and conversion to pesos.  For

20  example, in or around 2015, coconspirator three, a special

21  agent with the United States Drug Enforcement

22  Administration, instructed Yabrudi to retrieve an individual

23  to open a bank account in the Miami area in a different

24  person's name.  With the knowledge and acquiescence of

25  Yabrudi and coconspirator three, hundreds of thousands of

1   dollars in dollar-denominated cash, constituting proceeds

2   from illegal drug sales, were deposited into this account.

3   None of these deposits, nor the use of the funds that

4   followed, were officially sanctioned DEA operations.  And

5   neither Yabrudi nor coconspirator three informed the DEA of

6   these activities while they were occurring.

7         Yabrudi and coconspirator three directed some of

8   these drug proceeds to other coconspirators, including

9   coconspirator two, who resided in Marion County, Florida, in

10   the Middle District of Florida, and held a business account

11   there in the name of company B.

12         Coconspirator two then used these funds to make

13   so-called mirrored payouts in pesos to traffickers and their

14   associates back in Colombia through the BMPE.  On other

15   occasions, Yabrudi took funds from this account and made the

16   mirror payouts in Colombia himself, earning money on the

17   exchange rate that he applied to these BMPE transactions.

18   Yabrudi directed other portions of the drug proceeds in the

19   account that he and coconspirator three had opened to

20   coconspirator one who owned an export business in the Miami

21   area, company A.

22         For example, in 2016, Yabrudi wrote several checks

23   totaling tens of thousands of dollars from this account, all

24   payable to company A.  Yabrudi intended these transfers as

25   loans to fund export shipments to Colombia as part of the

38

TBML scheme.

Coconspirator one used the dollar-denominated funds to purchase cellular telephones through company A that were exported to Colombia in exchange for pesos, which coconspirator one then used to repay Yabrudi the principal of the loans plus interest. Yabrudi continued to use this account for similar laundering activities through at least May of 2017.

Yabrudi sometimes made cash withdrawals from this account for his own benefit. Other times, he provided cash payments to coconspirator three or deposited money into accounts controlled by coconspirator three's family members, both at coconspirator three's request.

At all times Yabrudi knew that the funds deposited into this account were illegal drug proceeds and that coconspirator three was acting outside the scope of his authority as a DEA special agent.

A second means by which Yabrudi and his conspirators facilitated the laundering, repatriation, and conversion of drug proceeds from the United States into pesos in Colombia involved the use of undercover accounts controlled by the DEA.

As part of the agency's mission to identify and bring to justice those responsible for laundering drug proceeds in the United States and abroad, the DEA maintained

MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

1    undercover accounts in the name of shell companies which

2    accounts it used to receive illicit cash deposits and then

3    to wire to suspected money launderers.  One of these shell

4    companies was company C which maintained accounts in

5    Hillsborough County, which was located in the Middle

6    District of Florida.

7            The accounts of company C regularly receive large

8    cash deposits and other transfers constituting illegal drug

9    proceeds.  Coconspirator three, often through an

10   intermediary, provided Yabrudi with the opportunity to

11   purchase funds in company C and other DEA undercover

12   accounts for use in the TBML/BMPE scheme.  For example, in

13   or around October 2012, coconspirator four, an intermediary

14   introduced to Yabrudi by coconspirator three, informed

15   Yabrudi that dollars were available for purchase and

16   laundering.  Yabrudi then purchased approximately $45,000 in

17   illicit funds from a DEA undercover account held by company

18   C.  Yabrudi immediately arranged for peso-denominated mirror

19   payouts through the BMPE in Colombia to traffickers and

20   their associates to complete the laundering, repatriation,

21   and conversion process as to those trafficker's funds,

22   earning a profit from the exchange rate he charged as part

23   of that transaction.

24           Meanwhile, Yabrudi lent the dollar-denominated

25   funds from the DEA account to coconspirator one, who used

1    company A to purchase cellular telephones that were exported

2    to Colombia and sold in exchange for pesos.  Coconspirator

3    one arranged for Yabrudi to be paid in pesos, thereby

4    satisfying coconspirator one's debt to Yabrudi plus

5    interest.

6              Separately, an account held by a company under

7    coconspirator two's control received $50,000 from the same

8    DEA undercover account.

9              Similarly, in or around February 2014, Yabrudi

10   purchased approximately $250,000 in illicit funds from a DEA

11   undercover account through coconspirator four.  Yabrudi had

12   these funds wired to an account in the name of company A,

13   coconspirator one's business.  Coconspirator one purchased

14   approximately $250,000 in cellular telephones through

15   company A that were shipped to Colombia and sold for pesos.

16   Coconspirator one returned $100,000 to Yabrudi, plus

17   interest, approximately one month after receiving the wire

18   transfer.  Coconspirator one also executed a promissory note

19   to Yabrudi for the remaining $150,000 promising to pay

20   Yabrudi the funds, plus interest, over the following 18

21   months.  Meanwhile, Yabrudi arranged for peso-denominated

22   mirror payouts to traffickers and their associates in

23   Colombia to complete the laundering, repatriation and

24   conversion process.

25             In or around April 2015, coconspirator four

```
 1    arranged for Yabrudi to purchase approximately $34,000 of
 2    illicit drug proceeds from a DEA undercover account.
 3    Yabrudi then directed those funds to an account held by
 4    coconspirator two's company B, which is incorporated within
 5    Orange County, Florida, located within the Middle District
 6    of Florida.  Coconspirator two then arranged for
 7    peso-denominated mirror payouts to traffickers and their
 8    associates in Colombia by way of the BMPE, thereby
 9    completing the laundering, repatriation and conversion
10    process.
11              Yabrudi was not authorized by the DEA, nor was he
12    otherwise acting under the color of the law to engage in
13    these illegal laundering activities.  Total amount of
14    illegal funds that passed through company A's account at
15    Yabrudi's direction was at least $7 million.
16              (Inaudible), Your Honor.
17              THE COURT:  All right.  Thank you.
18              Mr. Yabrudi, did you hear the facts as stated by
19    the prosecutor?
20              THE DEFENDANT (via interpreter):  Yes, sir.
21              THE COURT:  Do you have any disagreement with any
22    of those facts?
23              THE DEFENDANT (via interpreter):  No.
24              THE COURT:  Are those facts true?
25              THE DEFENDANT (via interpreter):  Yes, sir.
```

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

1      **THE COURT:**  I want you to understand, sir, that it

2   does not make a difference to the Court whether you decide

3   to enter a plea of guilt in your case or decide to take your

4   case to trial.  This important decision is for you and you

5   alone.  Having stated that, do you feel that you are

6   prepared to make that decision today?

7      **THE DEFENDANT (via interpreter):**  Yes, sir.

8      **THE COURT:**  All right, sir.  Please rise.

9      Gustavo Adolfo Yabrudi, how do you plea to Count I

10  of the information which charges you with a conspiracy to

11  commit money laundering in violation of Title 18, United

12  States Code, Section 1956(h), guilty or not guilty?

13     **THE DEFENDANT (via interpreter):**  Guilty.

14     **THE COURT:**  And are you pleading guilty to this

15  offense because you're, in fact, guilty of this crime?

16     **THE DEFENDANT (via interpreter):**  Yes, sir.

17     **THE COURT:**  Mr. Concepcion, anything you want to

18  put on the record at this time?

19     **MR. CONCEPCION:**  No, Your Honor.

20     **THE COURT:**  All right, thank you.

21     Thank you, sir.  You may be seated.

22     Mr. Mandolfo, any other suggested questions from

23  the Court or anything else you want on the record at this

24  time?

25     **MR. MANDOLFO:**  No, Your Honor.  Thank you.

1      **THE COURT:**  Thank you.

2      All right.  Mr. Yabrudi, then, before I conclude,

3  I want to ask you, sir, do you have any questions about

4  anything that we have discussed, or, for that matter,

5  anything that I did not cover with you?

6      **THE DEFENDANT (via interpreter):**  No, sir.

7      **THE COURT:**  Let me note for the record based upon

8  my review of the information and plea agreement, my

9  discussions with Mr. Yabrudi, as well as the factual basis

10 as provided by the Government, I am fully satisfied that

11 Mr. Yabrudi is competent to enter a plea of guilt and his

12 plea is being entered knowingly, intelligently and

13 voluntarily, and it is supported by an independent factual

14 basis for each of the essential elements of Count I of the

15 information.

16     So what that means, sir, is I'm going to issue a

17 report recommending that your plea be accepted to Judge

18 Honeywell.  You will have 14 days to object to my report.

19 In you do not object to my report, in all likely event, your

20 plea will be accepted, and your case will be scheduled for

21 sentencing, which typically occurs within 70 to 90 days from

22 the date of your plea, absent any other circumstances.

23     During the interim period, the probation office is

24 going to want to conduct an interview with you for the

25 presentence investigative report.  It's your decision

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

1  whether to participate in that interview.  If you do decide

2  to participate in the interview, you can have Mr. Concepcion

3  present with you for the interview.  You understand that?

4          **THE DEFENDANT (via interpreter):**  Yes, sir.

5          **THE COURT:**  All right.  Anything else at this

6  time?

7          **MR. MANDOLFO:**  No, Your Honor.

8          **THE COURT:**  Anything else?

9          **MR. CONCEPCION:**  No, Your Honor.

10          **THE COURT:**  All right.  We'll be in recess.  Thank

11  you.

12          All right.  Go ahead.

13          **MR. MANDOLFO:**  Because I made the motion to

14  withdraw the sealing, the sealing of the plea agreement and

15  related documents, does that motion remain on the docket or

16  does that get withdrawn from the docket?

17          **THE COURT:**  So it would remain unless you're

18  requesting that it be struck from the record.  What would

19  you prefer?

20          **MR. MANDOLFO:**  I would like it to be struck from

21  the record.  I can refile the plea agreement.  Or if we can

22  just leave Exhibit 1 as the plea agreement.  If it's not

23  feasible, then I understand.

24          Let me --

25          **THE COURT:**  Let me think about that for a moment.

1          Ms. Vito.

2          (Discussion held off the record between the Court

3    and the courtroom deputy.)

4          **THE COURT:**  The problem, Mr. Mandolfo, is because

5    we've got the record of it now, based upon the ruling and

6    what was stated during the hearing, I think it's going to

7    complicate matters and confuse the record.  So I'm going to

8    leave it as it is.

9          **MR. MANDOLFO:**  Yes, Your Honor.  Thank you.

10         **THE COURT:**  All right.  We'll be in recess.  Thank

11   you.

12         (Recess at 12:16 p.m.)

13              **C E R T I F I C A T E**

14

15         I certify that the foregoing is a correct

16   transcript from the record of proceedings in the

17   above-entitled matter.

18

19   January 13, 2019

20

21   ____s\__Nikki_L._Peters_____
     Nikki L. Peters, RPR, CRR, CRC, FPR
22   Federal Official Court Reporter
     United States District Court
23   Middle District of Florida

24

25

              UNITED STATES DISTRICT COURT
              MIDDLE DISTRICT OF FLORIDA
                   TAMPA DIVISION